PbaesoN, J.
 

 Upon the first point, we concur with his Honor ; but not for the reason assigned by him.
 

 The Act limiting the time in which prosecutions shall be commenced for misdemeanors, has a proviso, that in case the offender shall abscond or conceal himself, or the offence shall have been committed in a secret manner, the statute shall not begin to run until the apprehension of the offender, or discov
 
 *115
 
 ery of the offence. The Act limiting the time in which civil actions may be brought, lias no proviso to this effect, and it is settled, that no fraud or concealment will prevent the statute from beginning- to run, at the time the cause of action accrues, or the possession becomes adverse;
 
 Baines
 
 v. Williams, 3 Ired. 481.
 
 Hamilton
 
 v.
 
 Shepperd,
 
 3 Mur. 115. The question is, at what time did the defendant’s possession become adverse, so that a cause of action accrued against him ? The"case as made up, assumes that there was no adverse possession prior to the death of the testator.
 

 The defendant’, as one of the executors appointed by his father’s will, had a right, upon the death of the testator, to take the slave into possession, and keep the possession until the will was admitted to probate, and the other executor qualified and took letters testamentary. This doctrine is fully discussed, and the law is so settled,
 
 Arnold v.
 
 Arnold, 13 Ired. 174.
 

 As the defendant had a right to the possession of the slave under his father’s will, his possession was not adverse, and nothing that he could say or do could make it so. His claiming him as his own property under the deed amounted to nothing; There can be no adverse possession, and one cannot acquire a title by having property in possession, unless he exposes himself by the fact of his possession, to an action by the owner or his representative-; The defendant could not, as executor of his father, sue himself” for claiming to hold the slave as his property under the deed; nor could the other executor sue him for doing so until the letters testamentary wore taken out; for had he known of the existence of the will, he would, until his qualification, have been but a tenant in common with the defendant. The defendant’s position is, that ho acquired the title to a slave of his father which he had willed to the plaintiffs by reason of the fact that he had held possession for more than three years, during no part of which time was he -exposed to an action ■! so there would have been no error if his Honor had instructed the jury that the statute did not begin to run until January Term, 1847; and as the writ issued in 1848, the statute was no bar to the action.
 

 
 *116
 
 We have seen that the defendant could not have an adverse possession until the other executor qualified : it does not follow that he then had an adverse possession, “
 
 ipso facto
 
 for as he took the possession rightfully it would seem that it did not become wrongful, and he was not exposed to an action until a demand. The case does not state- that the defendant ever renounced; or that the executor who qualified, ever made a demand ; or the time of his assent to the legacy : for these reasons, if the second question decided by his Honor was attended with any difficulty we should not feel at liberty to decide it, upon the ground that it is not presented by the facts stated. But as it seems to have been assumed, that at the time of the assent, the defendant was in the adverse possession, we have no hesitation in saying, that we fully concur with his Honor.
 

 The testator being in possession at the time-of his death, the title passed to the legatee by force of the will, subject, only, to the right of the executor to hold it until he gave his assent. "When he did so, the title did not pass from him, but his assent amounted merely to an extinguishment of his right to withhold the title, if the property should be required to pay debts. After his title was thus extinguished, the title of the legatee related back, and he held the property by force of the will, and not of the executor’s assent.
 
 Lillard
 
 v. Reynolds, 3 Ired. 366. The assent of an executor, therefore, does not in any particular fall within the reason of the rule, that one cannot transfer title to property which is in the adverse possession of another ; for the same reason it has never been considered as coming within the operation of the statute, which requires all transfers of slaves to be in writing.
 

 "Whether, if there be an adverse possession at the death of the testator, the executor can assent, so as to give the legatee the right of action, and is not bound to reduce the property into possession before he can give his assent, is a different question, as to which we express no opinion.
 

 Pee, CueiaM. Judgment affirmed.